UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KEVIN BANKS,

    Plaintiff,

vs.

GREENE COUNTY, OHIO, *et al.*,

    Defendants.

Case No. 3:23-cv-343

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

---

**ORDER: (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (2) REFERRING THIS CASE TO MAGISTRATE JUDGE PETER B. SILVAIN, JR., IN HIS ROLE AS MEDIATION COORDINATOR, TO ASSIGN THIS CASE TO THE APPROPRIATE MAGISTRATE JUDGE FOR MEDIATION**

---

    Plaintiff Kevin Banks ("Banks") is a former deputy sheriff with the Greene County, Ohio Sheriff's Office ("GCSO"). Plaintiff alleges, and Defendants address in their motion for summary judgment, claims of age discrimination, retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 631, *et seq.* and the Family Medical Leave Act, 29 U.S.C. § 2615(a), and aiding and abetting under Ohio law. Doc Nos. 1, 17. Plaintiff also asserts state law claims for age discrimination and retaliation. Defendants are Greene County, Ohio; GCSO Chief Deputy Doug Doherty; GCSO Captain Kelly Edwards; Sergeant Daniel Funk; Greene County Sheriff Scott Anger; and Major Brad Balonier ("Defendants"). *See* Doc. No. 16 at PageID 171; Doc. Nos. 16-1, 16-2.

    Defendants claim that Banks was terminated because he directed a fellow police officer to photograph a transgender female victim's breasts after she was allegedly assaulted by a fellow detainee. Doc. No. 17 at PageID 344. Defendants also claim that Banks did not follow GCSO policy and procedure during the sexual assault investigation, leading to an internal investigation.

1

Doc. No. 16-9 at PageID 336.  That internal investigation ended with Banks signing a resignation letter that had been pre-written by GCSO.  Doc. No. 16 at PageID 211.

This civil case is now before the Court upon Defendants' motion for summary judgment (Doc. No. 17), Plaintiff's memorandum in opposition (Doc. No. 20), and Defendants' reply (Doc. No. 21). The motion is now ripe for review.

## I.

The following factual discussion rests upon the evidence submitted in support of Defendants' motion for summary judgment.  The Court views the evidence in the light most favorable to Plaintiff, the non-moving party.  *See Keweenaw Bay Indian Community v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007).  This includes, among other things, Plaintiff's deposition testimony and related exhibits.  Doc. No. 16.

### A.  Background

Plaintiff, born in 1969 and 53 years old at the time of his termination date, began working at GCSO in 2000.  Doc. No. 16 at PageID 97.  He held multiple positions over the years, beginning as a deputy corrections officer and ultimately serving as a deputy sheriff on road patrol.  *Id.* at PageID 97-98.   He alleges that beginning in approximately November 2021, his coworkers targeted him with comments based on his age.  *Id.* at PageID 245. Some specific comments were: "Do you need a walker?" and "It's wintertime.  Are you going to be able to move fast?"  *Id.* at PageID 245-46.  Plaintiff also alleges that his coworkers commented in daily meetings about his use of FMLA leave.  *Id.* at PageID 241-42.  For instance, some of the comments from coworkers were: "I can't believe you had to call off," "Why did you call off[?]," "You're taking away from my family time," "You didn't need to call off…", "You're f_____g your friends over," and

"You're f\_\_\_\_\_g the shift over." *Id.* at PageID 241-42. GCSO management did not intervene to stop these comments or come to Plaintiff's defense during his employment. *Id.* at PageID 242-44.

### B. June 16, 2022

On June 16, 2022, Plaintiff and Deputy Sheriff Nate Slone ("Slone") went to the Green County Jail to investigate an alleged sexual assault. *Id.* at PageID 181-92. Slone, at that time, was a newer GCSO employee on probationary status. *Id.* at PageID 265. The victim was a transgender female who allegedly had been sexually assaulted by a fellow detainee. *Id.* at PageID 186-87. During the alleged assault, the aggressor grabbed the victim from behind, touched the victim's breasts and pulled the victim back with force. *Id.* at PageID 187. As part of their investigation, Plaintiff directed Slone to take photographs of the victim's facial side profile, face and breasts. *Id.* at PageID 187; Doc. No. 16-8 at PageID 336. Plaintiff and Slone completed and submitted a report, including the photographs taken of the victim. Doc. No. 16 at PageID 193-95; Doc. No. 16-8 at PageID 336.

### C. Internal Investigation

After receiving and reviewing the report and photographs, Detective Hensley raised his "serious concerns" about it to Defendant Edwards. Doc. No. 16-8 at PageID 333. In particular, Hensley was concerned and took issue with the one photograph of the victim's breasts, which he found unusual and objectionable. *Id.* Further, Hensley was concerned that Plaintiff did not call a victim advocate. *Id.* Nor did he transport the victim to the hospital for additional treatment with a sexual assault nurse examiner ("SANE"). *Id.* GCSO policy states that in conducting such an investigation, an officer should have a SANE "be the photographer for sexual assault victims," and "victim advocates need to be called in during the reporting process in order to protect victim's

3

rights." Doc. No. 16-9 at PageID 336.  Because of these concerns, Defendant Edwards began an internal investigation.  *Id.*

Plaintiff requested an expedited hearing, which was scheduled for July 12, 2022.  Doc. No. 16-8 at PageID 334.  At the July 12th hearing, Defendant Funk, Plaintiff, Deputy Sticka, and Defendant Edwards were present.  *Id.*  That same day, Plaintiff was placed on administrative leave pending completion of the internal investigation.  Doc. No. 16-5 at PageID 329; Doc. No. 16 at PageID 169.

Plaintiff met with Defendant Doherty on August 2, 2022 regarding the ongoing internal investigation.  Doc. No. 16 at PageID 203-04.  At the meeting, Doherty presented Plaintiff with two options: (1) resign; or (2) continue in the investigative process and potentially be disciplined, which could include termination.  *Id.* at PageID 205.  Plaintiff talked with Deputy Sticka, his union representative, about what had been discussed up until that point.  *Id.* at PageID 206.  Plaintiff and Deputy Sticka then called the attorney for the union, Steve Lazarus, but Lazarus informed them that he would be unable to review everything from the investigation until a week later, when he returned to the office.  *Id.*  Plaintiff requested time to consult with Lazarus, but Doherty denied his request.  *Id.* at PageID 207.  Then, Doherty gave Plaintiff twenty-four (24) hours to decide which option to choose.  *Id.*  The next day, Plaintiff chose to sign a pre-written resignation letter, allegedly drafted by Doherty, rather than possibly be terminated through the disciplinary process.  *Id.* at PageID 211.  Plaintiff claims he chose to sign the resignation letter because he believed that if he chose to continue with the ongoing disciplinary process and was found responsible for prohibited conduct, it could negatively affect his retirement benefits.  *Id.*

Slone, who was a probationary employee in his late twenties during June and July of 2022, was not formally disciplined after the June 16, 2022 incident.  Doc. No. 19-1 at PageID 383.

4

Instead, Slone was simply "counseled by Captain Dan Funk." *Id.* Plaintiff advocated for Slone to receive less harsh discipline because, even though Slone took the photographs of the victim, it was Plaintiff who instructed Slone to take the photographs. Doc. No. 16 at PageID 265 (Plaintiff testified, "I made it clear that he did it under my direction, so that he would not get disciplined.").

## II.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if . . . depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

### III.

The Court, having reviewed the record carefully—including the parties' briefs, the opposition memoranda in the case, and the summary judgment evidence—questions whether Defendants, as the moving party, have met their burden to prove they are entitled to summary judgment. Assuming, *arguendo*, that burden has been satisfied, the Court finds there are one or more material facts in dispute, which merits denying summary judgment. Among other questions and facts in dispute the Court notes, *inter alia*:

(1) Was there a comparator employee in the past that engaged in the same photographic conduct as Plaintiff, and was that person terminated like Plaintiff?

(2) The probationary employee in this instance, Slone, retained his employment, and was counseled by a superior, whereas Plaintiff was terminated. This disparity is not sufficiently explained, particularly in light of comparator employees.

(3) Plaintiff, who was over 40 years of age at the time of his termination, was given 24 hours to consider whether he would be terminated or resign—and Defendants fail to explain in

6

their motion whether this time period was, or was not, a violation of the Older Workers Benefit Protection Act, 29 U.S.C.A. § 621, *et seq.*

(4) The nature and full extent of the assault on the transgender victim is not sufficiently explained in the motion—this is relevant because, under unique facts of this case, the Court needs to have a complete understanding of the nature of the victim's injuries, and whether it is argued that photographing the victim's breasts may have possibly been relevant to the investigation of this particular assault.

(5) Finally, with respect to the age-based and FMLA comments discussed above, Defendants have not demonstrated that they are entitled to summary judgment as a matter of law. Given Banks' deposition testimony, describing the comments he received, there remain disputes of fact for a jury to decide, such as: who said the comments, the role the speakers had within GCSO, the timeline of the comments, the pervasiveness of the comments, and the potential of a pretextual investigation and constructive discharge. *See* Doc. No. 16 at PageID 241-46.

**IV.**

Accordingly, Defendant's motion for summary judgment is **DENIED**. This matter is **REFERRED** to Magistrate Judge Peter B. Silvain, Jr., in his role as mediation coordinator, to assign this case to the appropriate Magistrate Judge for mediation. If the case settles following mediation, it will be terminated on the docket. If the case is not settled, it will be promptly scheduled for trial.

**IT IS SO ORDERED.**

  January 16, 2026                                       s/*Michael J. Newman*
                                                                          Hon. Michael J. Newman
                                                                          United States District Judge